UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| ANDRE SYLVESTER WATTS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 01-0284 (RJL) |
| | ) | |
| ANTHONY WILLIAMS, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION**

This matter is before the Court on defendant Timothy Harrison's renewed motion for summary judgment.[1] For the reasons discussed below, the Court will grant summary judgment for defendant on the ground that he is entitled to and protected by qualified immunity.[2]

I. BACKGROUND

On or about June 12, 1998, defendant was a sworn officer of the Metropolitan Police Department ("MPD") working in a police uniform and in an off-duty capacity as a security guard at the Washington Gas Light Company ("Washington Gas") headquarters at 1100 H Street, N.W., Washington, DC. Notice of Supplemental Filing Regarding Defendant Timothy

---

[1] Also pending is plaintiff's motion for "Issuance of an Order" [Dkt. #157], which the Court will deny.

[2] The District of Columbia and its Mayor have been dismissed as party defendants. *See Watts v. Williams*, No. 01-0284, 2006 WL 3734169 (D.D.C. Dec 15, 2006), *appeal dismissed*, 279 Fed. App. 11 (D.C. Cir. 2008) (per curiam). All proceedings with respect to the third-party complaint have been stayed pending resolution of defendant's renewed motion for summary judgment and pending any appeal from such ruling. *See* Dkt. # 93, 97, 98

-1-

Harrison's Renewed Motion for Summary Judgment ("Def.'s Notice"), Ex. B ("Harrison Decl.")

¶¶ 1-2. On that day, it appeared that plaintiff "and a cohort committed a common urban ruse in order to rob an unsuspecting citizen[:]"

> As the [victim] was walking down New York Avenue, N.W., [plaintiff's] cohort dropped pocket change in front of the [victim] and bent over to retrieve it. This caused the [victim] to stop, at which time [plaintiff] approached her from behind, reached into her purse, and removed her wallet. The two then ran, and the [victim], realizing that she had been robbed, gave chase.

Memorandum of Points and Authorities in Support of Defendant Timothy Harrison's Renewed Motion for Summary Judgment ("Def.'s Mot."), Ex. D (July 6, 1998 order denying reconsideration of pre-trial detention order) at 1-2.[3] These events occurred at approximately 1:30 p.m. *Id.*, Ex. A (transcript of March 17, 1999 proceedings in the Superior Court of the District of Columbia) at 8. Plaintiff and his cohort entered the Washington Gas building.[4]

According to defendant, the subsequent events occurred as follows:

---

[3] The parties do not dispute that plaintiff committed robbery and assault on a police officer. The prosecutor, however, proffered a different version of the robbery:

> [Plaintiff's cohort] stepped in front of [the victim] and acted as if he was going to open the door into which she was . . . attempting to enter. This was at the location of 1100 H Street, Northwest, in Washing[ton], D.C. At the same time, [plaintiff] stepped behind [the victim]. As [plaintiff's cohort] was attempting to distract the victim by opening the door, [plaintiff] reached into the victim's purse, apparently unzipped it and removed from her purse, that was hanging from her shoulder strap, her wallet.

Def.'s Mot., Ex. A (transcript) at 9. The facts of the underlying robbery are not material in this case, and, therefore, have no bearing on the Court's analysis of defendant's qualified immunity argument.

[4] It does not appear that plaintiff's cohort was apprehended. *See* Def.'s Mot., Ex. A at 10.

> I saw [plaintiff] and another person enter the building and walk into a stairwell in an employee area of the [Washington Gas building]. Another security guard instructed [plaintiff] and his companion to come back out of the stairwell. As they were doing so, a woman entered the building, pointed at [plaintiff] and his companion, and shouted that they had taken her wallet.
>
> I followed [plaintiff] as he ran into another stairwell leading down to the basement. When he entered the stairwell, he dropped the wallet. [Plaintiff] ignored my commands to stop. When he exited the stairwell into the basement, he ran into the cafeteria where he threw furniture and chairs in an attempt to trip me in my pursuit. Other Washington Gas employees were present.
>
> Although [plaintiff] continued to evade me, I was finally able to grab him and tackle him. We ended up on the floor with me on top of him. I was still unable to control him, though, as he kept struggling by snatching his arms from me and trying to push me away. To try to gain control of him, I used the weight of my body to try to keep him down, and I used my hands to try to restrain his arms. He continued to struggle with me in this manner until other officers arrived. Finally under control, [plaintiff] was handcuffed.

Harrison Decl. ¶¶ 2-4.

Larry Rollins, who was in the cafeteria in the basement of the Washington Gas building, observed defendant chasing plaintiff and observed plaintiff "knocking over tables in front of [defendant] as they ran all over the cafeteria." Def.'s Notice, Ex. C ("Rollins Decl.") ¶ 2. Plaintiff apparently made his way from the cafeteria to a nearby mailroom. Mr. Rollins further reported:

> Concerned for my safety, I decided to leave [the cafeteria]. As I was leaving, waiting for the elevator to arrive, [defendant] called out to me from the neighboring mailroom "get my gun." Other persons who were in the mailroom hid under tables.
>
> I ran over to the officer, who was on top of [plaintiff], as [plaintiff] was lying on his back on the floor. [Defendant] was commanding [plaintiff] to "stay down." [Plaintiff], though, had his

> arms and legs wrapped around [defendant] and was trying to get up by rolling [defendant] over. It appeared that [plaintiff] was gaining the advantage in the struggle and that [defendant] was unable to control him. At the same time, I also saw [plaintiff's] hand trying to take the safety clip off [defendant's] holder and remove [defendant's] firearm.
>
> I feared that [plaintiff] would take the firearm and shoot [defendant], as well as myself and others present. I took [plaintiff's] hand off the gun holster and held his arm to the floor. [Plaintiff] was strong, and I had difficulty just keeping his hand away from the gun. [Plaintiff] continued struggling to free himself, with the officer on top of him, until about five minutes later, when additional police officers arrived. The officers picked up [plaintiff] and handcuffed him.

*Id.* ¶¶ 2-4.

According to plaintiff, defendant "beat [him] and struck [him] repeatedly in the head and upper body" and "applied a chokehold." Amd. Compl. ¶ 10. Plaintiff allegedly "sustained physical injuries, including cuts and bruises to his face and head," *id.* ¶ 11, and subsequently was treated at District of Columbia General Hospital, *id.* ¶ 12.

Defendant states that he "did not use a weapon on [plaintiff]" and that he "never choked, kicked or stomped him." Harrison Decl. ¶ 5. He did not "recall ever punching [plaintiff] in the head or anywhere else on his body," and at no time was plaintiff unconscious. *Id.* The witness states that "[a]t no point did [he] see [defendant] choke [plaintiff], kick or stomp him, or hit him with a closed fist." Rollins Decl. ¶ 5. He corroborates defendant's statement that plaintiff "was conscious at all times." *Id.*[5]

---

[5] The prosecutor's proffer of evidence largely is consistent with the declarations of defendant and Mr. Rollins. After the robbery victim chased plaintiff and his unidentified cohort into the Washington Gas building:

> [P]laintiff ran into a stairwell which was restricted. He was chased by an off-
> (continued...)

Plaintiff was charged with and pled guilty to one count each of robbery and assault on a police officer. *See generally* Def.'s Mot., Ex. A. He was sentenced to a term of three to nine years' imprisonment for robbery, and to a consecutive term of one to three years' imprisonment for assaulting a police officer. *Id.*, Ex. E (May 26, 1999 Judgment and Commitment Order, Case No. F-4255-98).

---

[5](...continued)
duty Metropolitan police officer, Timothy Harrison, who was in full uniform and was working part-time as a security guard for [the] Washington Gas Company.

    At that point, [plaintiff] ran down the stairwell and ignored the commands of Officer Harrison to stop. In the course of the chase, [plaintiff] threw to the ground the bright pink wallet belong to [the victim]. He was chased down to the basement, and in the course of the pursuit he threw furniture in front of Officer Harrison in an attempt to make Officer Harrison trip and he eventually ran into the cafeteria and mail room area of Washington Gas Company where he was observed by several employees who were also in the area.

    Officer Harrison attempted, unsuccessfully, to try to detain and handcuff [plaintiff], who resisted arrest and struggled with Officer Harrison. Officer Harrison required the assistance of at least two and as many as three or four civilians who were working within the gas company to detain and subdue [plaintiff]. As Officer Harrison did not have handcuffs on him, he required the assistance of an officer who finally arrived and he was able to handcuff [plaintiff].

    In the course of the struggle, two civilians observed [plaintiff] attempting to remove Officer Harrison's handgun, which was in a holster at his hip. One of those employees . . ., Larry Rollins, removed [plaintiff's] hand from the handgun of Officer Harrison, and [plaintiff] was ultimately subdued and placed under arrest. Thereafter, he was positively identified by the victim . . . as the same person whom she had seen . . . with her wallet.

    The wallet was subsequently recovered from the stairwell by [a] security guard . . . who returned it to the victim and she positively identified it based on the appearance of the wallet and the identification that was in it.

Def.'s Mot., Ex. A at 10-12. Under oath, plaintiff admitted that the proffered evidence is true. *Id.* at 17.

Plaintiff brings this civil rights action against defendant in his individual capacity, *see* Amd. Compl. ¶¶ 4, 19-23 25-27, and he demands compensatory and punitive damages, as well as attorney's fees and costs.

## II. DISCUSSION

### A. Summary Judgment Standard

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (stating that Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial"). A material fact is one "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "If material facts are at issue, or, though undisputed, are susceptible to divergent inferences, summary judgment is not available." *Tao v. Freeh*, 27 F.3d 635, 638 (D.C. Cir. 1994) (citing *Alyeska Pipeline Serv. Co. v. United States Envtl. Prot. Agency*, 856 F.2d 309, 314 (D.C. Cir. 1988)); *see Anderson*, 477 U.S. at 248 (stating that summary judgment is not appropriate "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

### B. The Court Treats Defendant's Statement of Material Facts as Admitted

The party opposing a motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a

genuine issue for trial." *Anderson*, 477 U.S. at 248 (citing Fed. R. Civ. P. 56(e)); *see Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (holding that the nonmoving party "must do more that simply show that there is some metaphysical doubt as to the material facts"); *see also Jackson v. Finnegan, Henderson, Farabow, Garrett & Dunner*, 101 F.3d 145, 150 (D.C. Cir. 1996).

Under the local rules of this Court, an opposition to a summary judgment motion must "be accompanied by a separate concise statement of genuine issues setting forth all material facts as to which it is contended there exists a genuine issue necessary to be litigated, which shall include references to the parts of the record relied on to support the statement." LCvR 7(h). "As the Court of Appeals for the District of Columbia Circuit has emphasized, '[LCvR 7(h) ] places the burden on the parties and their counsel, who are most familiar with the litigation and the record, to crystallize for the district court the material facts and relevant portions of the record.'" *Hinson ex rel. N.H. v. Merritt Educ. Ctr.*, 579 F. Supp. 2d 89, 91 (D.D.C. 2008) (quoting *Jackson,* 101 F.3d at 151 (discussing predecessor rule to LCvR 7(h) (additional citation omitted))). Thus, when facts are not controverted in opposition to a summary judgment motion, the Court "may assume that facts identified by the moving party in its statement of material facts are admitted." LCvR 7(h). When facts are disputed, however, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts, are jury functions, not those of a judge[.]" *Anderson*, 477 U.S. at 255.

Plaintiff offers no alternate version of the events of June 12, 1998 aside from the meager factual allegations in the Amended Complaint. Notwithstanding the requirements of LCvR 7(h), plaintiff has not submitted a separate statement of genuine issues of material facts as to which he

contends there exists a genuine issue for trial. The Court may and therefore does treat defendant's facts as conceded. *See, e.g., Smith v. Napolitano*, 626 F. Supp. 2d 81, 84 n.2 (D.D.C. 2009) (relying on defendant's submission in employment discrimination case where the plaintiff neither "offer[s] a counter-presentation of the events leading up to his non-selection, nor does he contest the defendant's presentation of these events"); *DeMartino v. Fed. Bureau of Investigation*, 511 F. Supp. 2d 146, 151 (D.D.C.2007) (holding that the "[p]laintiff does not contest, and therefore concedes, defendants' facts in support of summary judgment"); *cf. Stephenson v. Cox*, 223 F. Supp. 2d 119, 122 (D.D.C. 2002) ("The court's role is not to act as an advocate for the plaintiff and construct legal arguments on his behalf in order to counter those in the motion to dismiss.").

### C. Defendant Is Entitled to Qualified Immunity

Defendant argues that his "use of force was objectively reasonable under the circumstances." Def.'s Mot. at 5-9. Even if his use of force were unreasonable, he argues that he "is still entitled to qualified immunity of a reasonable officer could have believed that the force used was lawful." *Id.* at 9. The Court need not address defendant's alternative argument because, on this record, defendant demonstrates that his use of force was reasonable under the circumstances.

#### 1. Qualified Immunity is Immunity from Suit

"[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *see Anderson v. Creighton*, 483 U.S. 635, 638 (1987). Qualified

immunity is "an entitlement not to stand trial or face the other burdens of litigation." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). The privilege is "an immunity from suit rather than a mere defense to liability; and . . . is effectively lost if a case is erroneously permitted to go to trial." *Id.* Accordingly, the Supreme Court "repeatedly [has] stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (per curiam).

By definition, qualified immunity is not absolute. Rather, it "is applicable unless the official's conduct violated a clearly established constitutional right." *Pearson v. Callahan*, __ U.S. __, __, 129 S. Ct. 808, 816 (2009). "A plaintiff who seeks damages for violation of constitutional or statutory rights may overcome the defendant official's qualified immunity only by showing that those rights were clearly established at the time of the conduct at issue." *Davis v. Scherer*, 468 U.S. 183, 197 (1984).

### 2. Defendant's Use of Force Was Objectively Reasonable

All of plaintiff's claims stem from the alleged use of excessive force in effecting his June 12, 1998 arrest. "*[A]ll* claims that law enforcement officers have used excessive force – deadly or not – in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard." *Graham v. Connor*, 490 U.S. 386, 395 (1989) (emphasis in original); *see Tennessee v. Garner*, 471 U.S. 1, 7-22 (1985) (analyzing constitutionality of use of force under Fourth Amendment although complaint alleged violations of both Fourth Amendment and Fifth Amendment's Due Process Clause). "Such a claim is properly analyzed under the Fourth Amendment's objective reasonableness standard[] . . . which tracks the constitutional text by asking whether the force applied was

reasonable." *Johnson v. District of Columbia*, 528 F.3d 969, 973 (D.C. Cir. 2008) (internal quotation marks and citations omitted). To determine what conduct is reasonable "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396. "If the facts alleged no not establish a constitutional violation, [the Court] end[s] the inquiry and rule[s] for the officer." *Johnson*, 528 F.3d at 973.

As the District of Columbia Circuit instructs, the analysis proceeds as follows:

> In *Saucier v. Katz*, 533 U.S. 194, 201 (2001), the Supreme Court enunciated a two-step analysis for determining whether qualified immunity applies. First, the court must determine whether the [plaintiff] alleges violations of constitutional rights. If constitutional violations are alleged, the court must next determine whether the right allegedly violated is clearly established.

*Arrington v. United States*, 473 F.3d 329, 339 (D.C. Cir. 2006) (internal citations omitted). "[T]he *Saucier* procedure should not be regarded as an inflexible requirement," however, *Pearson*, 129 S.Ct. at 813, and its sequence no longer is mandatory, *id.* at 818. This Court in its discretion may address either of the two steps first "in light of the circumstances of the particular case at hand." *Id.* The Court opts to consider "this threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the [defendant's] conduct violated a constitutional right?" *Saucier*, 533 U.S. at 201.

In this case, defendant heard a woman shout that plaintiff and his unidentified companion had taken her wallet. He observed plaintiff attempt to enter a restricted stairwell, and when ordered by a security guard to exit that stairwell, he observed plaintiff enter another stairwell

leading to the basement. Defendant observed plaintiff drop a wallet, ignore commands to stop, enter a cafeteria where Washington Gas employees were present, and throw furniture in his path in an attempt to trip him. After defendant grabbed and tackled plaintiff, plaintiff continued to struggle to free himself. A witness observed plaintiff attempt to release defendant's gun from its holster, and, with difficulty, that witness assisted in plaintiff's arrest by taking plaintiff's hand off of the gun and holding plaintiff's arm to the floor. Aside from plaintiff's unsupported assertions, there is no evidence in the record that defendant beat, kicked, stomped or punched plaintiff, that defendant used a chokehold, a weapon, or deadly force, or that plaintiff sustained significant physical injuries during the encounter.

In conclusory fashion, plaintiff asserts that:

> any logically minded other police officer would have known that a chokehold was unnecessary considering the fact that the plaintiff had been restrained; thus stating by defendant when he said he laid on the plaintiff. At the time the defendant was at least 100 pounds heavier than the plaintiff, so continuing blows to plaintiff['s] upper body, face and head until the plaintiff was unconscious was excessive force and unnecessary thereby making defendant liable.

Pl.'s Opp'n at 2. Elsewhere in his opposition, plaintiff challenges the witness' declaration, claiming that Mr. Rollins "did not witness plaintiff trying to remove defendant['s] . . . revolver from his holster," and that Mr. Rollins "was never put in any danger by the [plaintiff's] attempt to flee apprehension." Pl.'s Opp'n, Ex. ("Plaintiff['s] Sworn Affidavit") ¶¶ 1, 4. Plaintiff further attributes a "bad faith" motive to Mr. Rollins' declaration because he had not provided a statement previously in either the criminal case or this litigation. *Id.* ¶ 3. Plaintiff's assertions hardly can be considered facts, and even if the assertions amounted to material facts, plaintiff has failed to refer to the portions of the record on which he relies to support them.

Making an arrest "carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham*, 490 U.S. at 396. Here, a uniformed MPD officer chased a fleeing robbery suspect who resisted arrest, who attempted to take the officer's gun, and who struggled so much that the officer required the assistance of others to subdue him. Based on the record of this case, the Court concludes that defendant used reasonable force in effecting plaintiff's arrest, and for this reason, further concludes that defendant did not violate plaintiff's constitutional rights. Defendant is entitled to qualified immunity, and, therefore, the Court grants his motion for summary judgment.

An Order accompanies this Memorandum Opinion.

DATE: 9/23/09

RICHARD J. LEON
United States District Judge